UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TIMOTHY POPE, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>WINTRUST FINANCIAL CORPORATION d/b/a TOWN BANK,<br><br>　　　　　Defendant. | Case No. 3:19-cv-00554 |

## CLASS ACTION COMPLAINT

Plaintiff, Timothy Pope, by counsel, for his Class Action Complaint against Defendant Wintrust Financial Corporation d/b/a Town Bank ("Wintrust"), alleges as follows:

### I.   INTRODUCTION

1. This is a civil action seeking monetary damages, restitution, and declaratory relief from Defendant Wintrust, arising from the unfair and unconscionable assessment and collection of multiple $35 insufficient funds fees ("NSF Fees") on the same items.

2. Besides being deceptive, unfair, and unconscionable, this practice breaches contract promises made in Wintrust's adhesion contracts.

3. Plaintiff and other Wintrust customers have been injured by Wintrust's practices. On behalf of himself and the putative class, Plaintiff seeks damages, restitution, and injunctive relief for Wintrust's breach of contract and violation of the Wisconsin Deceptive Trade Practices Act.

## II.   JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of each of the putative classes exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of proposed classes that are each comprised of over one hundred members, and because at least one of the members of each of the proposed classes is a citizen of a different state than Defendant.

5. This Court has personal jurisdiction over Defendant because Defendant conducts business in this District.

6. Venue is proper in this District because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## III.   PARTIES

7. Plaintiff Timothy Pope is a natural person who resides in Brodhead, Wisconsin. Plaintiff has a personal checking account with Wintrust, which is governed by a Deposit Account Agreement (the "Deposit Agreement").

8. Defendant Wintrust Financial Corporation is a financial holding company based in Lake Forest, Illinois that operates, controls, and manages 15 chartered community banks in northern Illinois and southern Wisconsin. Wintrust is one of the largest banking companies in Illinois with more than $32 billion in assets.

9. Upon information and belief, Wintrust provides uniform bank policies and account documents to all fifteen of its wholly owned banking subsidiaries, including:

- Barrington Bank & Trust Company, N.A. (Hanover Park Community Bank, Hoffman Estates Community Bank, and Palatine Bank & Trust);

- Beverly Bank & Trust Company, N.A. (First National Bank of Evergreen Park, Hyde Park Bank, Oak Lawn Bank & Trust, and Pullman Bank & Trust);

2

- Crystal Lake Bank & Trust Company, N.A. (Algonquin Bank & Trust, Cary Bank & Trust, McHenry Bank & Trust);

- Hinsdale Bank & Trust Company (Clarendon Hills Bank, Community Bank of Downers Grove, The Community Bank of Western Springs, Community Bank of Willowbrook, Elmhurst Bank & Trust, Proviso Community Bank, and Riverside Bank);

- Lake Forest Bank & Trust Company (Bank of Highwood-Fort Sheridan, Highland Park Bank & Trust, and North Chicago Community Bank);

- Libertyville Bank & Trust Company (Gurnee Community Bank, Mundelein Community Bank, Vernon Hills Bank & Trust, and Wauconda Community Bank);

- Northbrook Bank & Trust Company (Buffalo Grove Bank & Trust, Deerfield Bank & Trust, Glenview Bank & Trust, and Northview Bank & Trust);

- Old Plank Trail Community Bank, N.A. (New Lenox) (Dyer Bank & Trust, First National Bank of Illinois, Joliet Bank & Trust, Orland Park Bank & Trust, Plainfield Bank & Trust, Shorewood Bank & Trust, South Holland Bank & Trust);

- St. Charles Bank & Trust Company (Aurora Bank & Trust, Elgin State Bank, and Geneva Bank & Trust);

- Schaumburg Bank & Trust Company, N.A. (Bloomingdale Bank & Trust, Elk Grove Village Bank & Trust, Roselle Bank & Trust, and Wood Dale Bank & Trust);

- State Bank of the Lakes;

- Town Bank;

- Village Bank & Trust;

- Wheaton Bank & Trust Company (Glen Ellyn Bank & Trust and Naperville Bank & Trust); and

- Wintrust Bank (North Shore Community Bank & Trust).

## IV.   FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**A.   Wintrust Charges Two Or More NSF Fees on the Same Item.**

10.   Wintrust's Deposit Agreement allow it to take certain steps when an accountholder attempts an Automated Clearing House ("ACH") transaction but does not have

3

sufficient funds to cover it. Specifically, Wintrust may (a) authorize the transaction and charge a *single* $35 Overdraft Fee; or (b) reject the transaction and charge a *single* $35 NSF Fee.

11. In contrast to its Deposit Agreement, however, Wintrust regularly assesses two or more NSF Fees on the *same* item or transaction.

12. Plaintiff does not dispute Wintrust's right to reject an item and charge a *single* NSF Fee, but Wintrust unlawfully maximizes its already profitable NSF Fees by using deceptive practices that also violate the express terms of its Deposit Agreement.

13. Specifically, Wintrust unlawfully assesses *multiple* NSF Fees on a single ACH transaction item.

14. Unbeknownst to consumers, each time Wintrust reprocesses an ACH transaction or check for payment after it was initially rejected for insufficient funds, Wintrust chooses to treat it as a new and unique item or transaction item that is subject to yet another NSF Fee. But Wintrust's Deposit Agreement never discloses that this counterintuitive and deceptive result could be possible and, in fact, suggests the opposite.

15. The Deposit Agreement indicates that only a *single* NSF Fee will be charged per "transaction item" or "item," however many times that item is reprocessed with no request from the customer to do so. An electronic item reprocessed after an initial return for insufficient funds, especially through no action by the customer, cannot and does not fairly become a new, unique item for fee assessment purposes.

16. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if an item is reprocessed for payment multiple times.

17. Wintrust's Deposit Agreement never discloses this practice. To the contrary, the Deposit Agreement indicates Wintrust will only charge a single NSF Fee on an item or per transaction item.

### 1. Plaintiff's Experience.

18. In support of his claim, Plaintiff offers an example of an NSF Fee that should not have been assessed against his checking account. As alleged below, Wintrust: (a) reprocessed a previously declined transaction item; and (b) charged a fee upon reprocessing.

19. On January 6, 2017, Mr. Pope attempted a $37.67 electronic payment via ACH.

20. Wintrust rejected payment of that item due to insufficient funds in Plaintiff's account and charged him a $35 NSF Fee for doing so. Mr. Pope does not dispute this initial fee, as it is allowed by Wintrust's Deposit Agreement.

21. Unbeknownst to Mr. Pope and without his request, however, five days later, on January 11, 2017, Wintrust processed the same item yet again, and again rejected the transaction due to insufficient funds and charged Mr. Pope *another* $35 NSF Fee.

22. *In sum, Wintrust charged Mr. Pope $70 in NSF Fees to attempt to process a single payment of nearly half that amount.*

23. Mr. Pope understood the payment to be a single item as is laid out in Wintrust's Deposit Agreement, capable at most of receiving a single NSF Fee (if Wintrust returned it) or a single Overdraft Fee (if Wintrust paid it).

**B.     The Imposition of Multiple NSF Fees on a Single Transaction Violates Wintrust's Express Promises and Representations.**

24. The Deposit Agreement provides the general terms of Plaintiff's relationship with Wintrust and makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees may be assessed.

5

25. The Deposit Agreement and fee schedule contain explicit terms promising that NSF Fees will only be assessed once per "item or "transaction item," when in fact Wintrust regularly charges two or more NSF Fees per "transaction item" even though a customer only requested the payment or transfer once. *See* Deposit Agreement, Ex. A at 4; Fee Schedule, Ex. B at 2.

26. Wintrust's Deposit Agreement indicates that a singular NSF Fee can be assessed on items or transaction items.

27. According to the Fee Schedule:

Overdraft Paid or Returned Check…$35.00 per transaction item*

*Overdraft Paid or Returned Item fee and Overdraft Fee per day applies to any item which is presented to us for processing. Items are any debits or withdrawals including checks (including electronic and substitute), Electronic Fund Transfers (ATM withdrawals, Account to Account and Point of Sale Transactions, debit card transaction, ACH transactions), transfers made in person, over the phone or by online banking to include mobile banking, Bill Pay, Zelle transactions and fees.

Ex. B at 2.

28. The Deposit Agreement states:

**Insufficient Funds Overdrafts and Returned Items** If your account does not have sufficient funds to pay an item, we may (i) return the item and charge you a returned item fee as outlined in the Special Service Fees Schedule provided to you at account opening; or (ii) pay such item which will create a negative balance in your account and charge you an overdraft paid fee as outlined in the Special Service Fees Schedule provided to you at account opening. ***This negative balance created by the payment of an item when you do not have sufficient funds is called an "Overdraft"***. Items are any debits or withdrawals presented to us for processing. Items generally include checks (including electronic and substitute), Electronic Fund Transfers (ATM withdrawals, Account to Account and Point of Sales Transactions, debit card transactions, ACH transactions), transfers made in person, over the phone or by online

6

banking to include mobile banking, Bill Pay, Zelle Transactions and fees.

Ex. A at 4.

29. The same "checks (including electronic and substitute), Electronic Fund Transfers (ATM withdrawals, Account to Account and Point of Sale Transactions, debit card transaction, ACH transactions), transfers made in person, over the phone or by online banking to include mobile banking, Bill Pay, Zelle transactions and fees" on an account cannot conceivably become new "transaction items" each time they are rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to reprocess them.

30. There is zero indication anywhere in the Deposit Agreement that the same "checks (including electronic and substitute), Electronic Fund Transfers (ATM withdrawals, Account to Account and Point of Sale Transactions, debit card transaction, ACH transactions), transfers made in person, over the phone or by online banking to include mobile banking, Bill Pay, Zelle transactions and fees" are eligible to incur multiple NSF Fees.

31. Even if Wintrust reprocesses an instruction for payment, it is still the same "item" or "transaction item." Wintrust's reprocessing is simply another attempt to effectuate an accountholder's original request for payment.

32. The disclosures described above never discuss a circumstance where Wintrust may assess multiple NSF Fees for a single check or ACH item that was returned for insufficient funds and later reprocessed one or more times and returned again.

33. In sum, Wintrust promises that *one* $35 NSF Fee will be assessed per "transaction item," and these terms must mean all iterations of the same request for payment. As such, Wintrust breached its Deposit Agreement when it charged more than one NSF Fee per item.

34. Reasonable consumers understand any given authorization for payment to be one, singular "item" or "transaction item" as those terms are used in Wintrust's Deposit Agreement.

35. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item" or "transaction item," which Wintrust will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Wintrust disclose that it will treat each reprocessing of a check or ACH payment as a separate transaction item, subject to additional fees, nor do Wintrust customers ever agree to such fees.

36. Customers reasonably understand, based on the language of the Deposit Agreement and Fee Schedule, that Wintrust's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees. In other words, it is always the same "item" or "transaction item."

37. Banks like Wintrust that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Wintrust never did.

38. For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as Wintrust, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Deposit Account Agreement*, First Citizen's Bank (Sept. 2018), https://www.firstcitizens.com/personal/banking/deposit-agreement (emphasis added).

39. First Hawaiian Bank engages in the same abusive practices as Wintrust, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf (last accessed June 27, 2019).

40. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

*Online Access Agreement*, KleinBank, https://www.kleinbankonline.com/bridge/disclosures/ib/disclose.html (last accessed June 25, 2019) (emphasis added).

41. First Financial Bank in Ohio, aware of the commonsense meaning of "item," clarifies the meaning of that term to its accountholders:

> Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly.

9

*Special Handling/Electronic Banking Disclosures of Charges*, First Financial Bank 2 (Aug. 2018), https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure_of_ Charges.pdf.

42. Wintrust provides no such disclosures, and in so doing, deceives its accountholders.

C. **The Imposition of Multiple NSF Fees on a Single Transaction Item Breaches Wintrust's Duty of Good Faith and Fair Dealing.**

43. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Wintrust is prohibited from exercising its discretion to enrich itself and gouge its customers.

44. Indeed, Wintrust has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor.

45. Here—in the adhesion agreements Wintrust foisted on Plaintiff and its other customers—Wintrust has provided itself numerous discretionary powers affecting customers' credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Wintrust abuses that discretion to take money out of consumers' account without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

46. When Wintrust charges multiple NSF Fees, the bank uses its discretion to define the meaning of "item" and "transaction item" in an unreasonable way that violates common sense and reasonable consumer expectations. Wintrust uses its contractual discretion to set the meaning of those terms that directly causes more NSF Fees.

47. In addition, Wintrust exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it reprocesses a transaction when it knows a customer's account lacks funds and then charges additional NSF Fees on a single item. Further, Wintrust abuses the power it has over customers and their bank accounts and acts contrary to his reasonable expectations under the Deposit Agreement. This is a breach of Wintrust's implied covenant to engage in fair dealing and act in good faith.

48. It was bad faith and totally outside of Plaintiff's reasonable expectations for Wintrust to use its discretion to assess multiple NSF Fees for a single attempted payment.

49. When Wintrust charges multiple NSF Fees, the bank uses its discretion to define contract terms in an unreasonable way that violates common sense and reasonable consumer expectations. Wintrust uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more NSF Fees.

50. Moreover, Wintrust provides itself discretion to refuse to reprocess transactions that are initially rejected. It abuses that discretion when it repeatedly reprocesses transactions and charges NSF Fees each time.

## V. CLASS ALLEGATIONS

51. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

52. The proposed classes are defined as:

11

> All Wintrust checking account holders who, during the applicable statute of limitations, were charged more than one NSF Fee on the same item (the "Multiple NSF Class").

> All Wintrust checking account holders in Wisconsin who, during the applicable statute of limitations, were charged more than one NSF Fee on the same item (the "Wisconsin Subclass").

53. Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

54. Excluded from the Classes are Wintrust, its parents, subsidiaries, affiliates, officers and directors, any entity in which Wintrust has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

55. The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of Wintrust and can be ascertained only by resort to Wintrust's records.

56. The claims of Plaintiff are typical of the claims of the Classes in that he, like all Class members, was charged improper NSF Fees. Plaintiff, like all Class members, has been damaged by Wintrust's misconduct in that he paid improper NSF Fees. Furthermore, the factual basis of Wintrust's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

57. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

58. Among the questions of law and fact common to the Classes are:

    a. Whether Wintrust charged multiple NSF Fees on a single item;

    b. Whether Wintrust breached its contract with consumers by charging

    multiple NSF Fees on a single item;

  c. Whether Wintrust breached the covenant of good faith and fair dealing by charging multiple NSF Fees on a single item; and

  d. Whether Plaintiff and the Classes were damaged by Defendant's conduct and the proper measure of damages.

59. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

60. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Wintrust, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, Class members will continue to suffer losses and Wintrust's misconduct will proceed without remedy.

61. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

## VI.  FIRST CLAIM FOR RELIEF
### Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of the Classes)

62. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

63. Plaintiff and Wintrust have contracted for bank account deposit, checking, ATM, and debit card services.

64. Wintrust breached promises included in the account documents as described herein when it charged multiple NSF Fees on the same "item" or "transactions item."

65. Under the law of each of the states where Wintrust does business, good faith is an element of every contract pertaining to the assessment of bank fees. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing.

66. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

67. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

68. Wintrust has breached the covenant of good faith and fair dealing through its NSF Fee policies as alleged herein.

69. Wintrust uses its contractual discretion to extract more than NSF Fee on the same item—in a way that no reasonable consumer would anticipate.

70. Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

71. Plaintiff and members of the Classes have sustained damages as a result of Wintrust's breach of the contract.

## VII.     SECOND CLAIM FOR RELIEF
### Violation of Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18.
### (On Behalf of the Wisconsin Subclass)

72. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

73. This cause of action is brought pursuant to Wisconsin's Deceptive Trade Practices Act, Wisconsin Statutes § 100.18 (the "DTPA").

74. Defendant's conduct violates Wis. Stat. § 100.18(a), which provides that no "corporation or association . . . with intent to sell, distribute, increase the consumption of . . . any . . . service . . . directly or indirectly, to the public for sale . . . shall make, publish, disseminate, circulate or place before the public . . . in this state, in a . . . notice . . . pamphlet . . . or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public . . . which . . . contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

75. Defendant engaged in deceptive and unlawful marketing in violation of Wisconsin law by representing that it would not charge multiple NSF Fees on the same "item" or "transaction item" when in fact it does.

76. Plaintiff and the Wisconsin Subclass relied upon Defendant's deceptive and unlawful marketing practices. Plaintiff did not expect to be charged multiple NSF Fees on the same "item" or "transaction item."

77. Plaintiff and members of the Wisconsin Subclass "suffer[ed] pecuniary loss because of a violation of § 100.18(1). Wis. Stat. § 100.18(11)(b)(2).

78. Plaintiff and members of the Wisconsin Subclass "suffer[ed] pecuniary loss because of a violation" of § 100.18(1). Wis. Stat. § 100.18(11)(b)(2).

79. Plaintiff and members of the Wisconsin Subclass are entitled to damages, costs, including reasonable attorney fees and other relief which the court deems proper. Wis. Stat. § 100.18(11)(b)(2).

## VIII.   JURY TRIAL DEMANDED

Plaintiff, on behalf of himself and all others similarly situated, hereby demands trial by jury on all issues in this Complaint that are triable as a matter of right.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

 a. Declaring Wintrust's NSF Fee policies and practices to be wrongful, unfair, and unconscionable;

 b. Restitution of all NSF Fees paid to Wintrust by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

 c. Actual damages in an amount according to proof;

 d. Pre-judgment interest at the maximum rate permitted by applicable law;

 e. Costs and disbursements assessed by Plaintiff in connection with this action,

including reasonable attorneys' fees pursuant to applicable law;

f. For attorneys' fees under the common fund doctrine, and all other applicable law;

and

g. Such other relief as this Court deems just and proper.

Dated: July 8, 2019                                Respectfully submitted,

/s/ Samuel J. Strauss
Samuel J. Strauss, SBN 1113942
TURKE & STRAUSS LLP
613 Williamson Street #201
Madison, WI
Telephone: (608) 237-1775
Fax: (608) 509-4423
sam@turkestrauss.com

Richard E. Shevitz
Lynn A. Toops
Vess A. Miller
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
Fax: (317) 636-2593
rshevitz@cohenandmalad.com
ltoops@cohenandmalad.com
vmiller@cohenandmalad.com

Jeffrey Kaliel (*pro hac* forthcoming)
Sophia Gold (*pro hac* forthcoming)
KALIEL PLLC
1875 Connecticut Ave. NW 10th Floor
Washington, D.C. 20009
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

*Counsel for Plaintiff and the Proposed Classes*